**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 12-24239-CIV-O'SULLIVAN**

DENARII SYSTEMS, LLC,
a Florida Limited Liability Company,

        Plaintiff,

v.

OMAR ARAB,
GREYNIER FUENTES, and
FRANK ALVAREZ, individuals, and
BLIT TECHNOLOGIES CORP., a Florida corporation.

        Defendants.

_____/

## SECOND AMENDED COMPLAINT

      Plaintiff Denarii Systems, LLC ("Denarii"), by and through its undersigned counsel, sues Defendants Frank Alvarez, Omar Arab, Greynier Fuentes, and Blit Technologies Corp., and for its Second Amended Complaint alleges:

## PARTIES, JURISDICTION AND VENUE

      1.     Plaintiff Denarii is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida.

      2.     Defendant Omar Arab resides in Miami-Dade County, Florida, is over 18 years of age, and is *sui juris*.

      3.     Defendant Greynier Fuentes resides in Miami-Dade County, Florida, is over 18 years of age, and is *sui juris*.

      4.     Defendant Frank Alvarez resides in Miami-Dade County, Florida, is over 18 years of age, and is *sui juris*.

5.     Defendant Blit Technologies Corp. is a Florida for-profit corporation with its principal place of business in Miami-Dade County, Florida.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as multiple claims in the case arise under federal law.  In addition, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the remaining state law claims which derive from a common nucleus of operative facts.

7.     This Court has personal jurisdiction over the Defendants because they reside in Florida, and because they operate, conduct, engage in, or carry on a business or business venture in this State, have an office or agency in this State, and/or are engaged in substantial and not isolated activity within this State.  Additionally, this Court has jurisdiction over the Defendants because they have committed tortious acts in this State.

8.     Venue is proper in the Southern District of Florida because the Defendants reside in the Southern District of Florida and because the causes of action accrued here.

## GENERAL ALLEGATIONS

### *Denarii's "Team"*

9.     Denarii is a processor of prepaid financial products and services.  Denarii's business is primarily focused on the processing of transactions associated with prepaid cards, which function much like debit cards or electronic gift cards.  These prepaid cards are accepted by vendors on the MasterCard networks.

10.    Denarii handles the real-time electronic processing of transactions made with these cards, which requires a secure platform to protect the financial data of card users and vendors.

11.     In order to develop and maintain its card-processing platform, Denarii employs a team of software engineers and developers responsible for writing Denarii's proprietary source code and ensuring that Denarii's platform is both functional and secure.

12.     Denarii's team of software specialists previously included Defendant Omar Arab, who was hired as an employee of Denarii on August 15, 2011, as Denarii's Chief Technology Officer.  Arab was responsible for overseeing both Denarii's production side – which included the development of new source code necessary for the writing of software – as well as its services side, responsible for the processing of card transactions.

13.     Denarii's team also included Defendant Greynier Fuentes, who was hired as an employee of Denarii on June 28, 2010, and served as Denarii's Director of Software Development.  Within this role, Fuentes reported directly to Defendant Omar Arab.

14.     Defendant Frank Alvarez was also an employee of Denarii, and was hired by Denarii on August 2, 2010.  From August 2, 2010, until his termination on October 22, 2012, Alvarez served as a Software Engineer whose primary responsibility was Quality Assurance. Due to his role in supervising the work product of other software engineers and developers, Alvarez was assigned top-level permissions granting him access to Denarii's existing proprietary source code and software, as well as the source code and software being produced by Denarii that was still in the development stage. Within this role, Alvarez reported to Defendant Omar Arab.

15.     Given their positions within the company, Defendants Arab and Fuentes were given the highest level of administrative access to Denarii's internal computer network, as well as Denarii's servers.  These servers stored data that was critical to Denarii's operations, allowed

for testing of source code and software that was still in the development stage, and supported the card-processing platform underlying Denarii's very existence and functionality.

*Abuse of Power*

16.     In addition to this high level of access to Denarii's technology systems, Defendant Arab also had the authority and position to oversee the awarding of contracts to independent software engineers and developers.   Early on, Arab began abusing this authority to hire independent contractors for Denarii in exchange for kickbacks.   In one such instance, Arab awarded software engineer Franco Ceruti and his company XTrend inflated contracts for work premised upon an agreement that Ceruti would pay Arab thousands of dollars each month from these Denarii contracts—payments which were kept hidden from Denarii.

17.     Defendant Arab also began invoicing Denarii each month for services allegedly provided by his friend and former business partner, Alberto Padin, through an entity called Optimus Consulting Services.  Arab personally approved these payments, all the while aware of the fact that no work was being provided by Alberto Padin or Optimus Consulting Services for Denarii.  These invoices, submitted monthly from February 27, 2012 until September 28, 2012, alone total $84,000.

18.     Beyond these abuses, Defendants Arab and Fuentes concocted another scheme through which they could steal Denarii's assets by abusing their insider roles.  This plan included establishing a fraudulent corporation which would serve as a provider of services and hardware to Denarii, while in reality functioning as an alter ego of Defendants Arab and Fuentes.

19.     The company, formed as Blit Technologies Corp. ("Blit"), was incorporated on March 12, 2012, with Manuel Munoz serving as Blit's incorporator, President, Vice President, Secretary, Treasurer, and Director.  Defendants Arab and Fuentes selected Manuel Munoz for

this role given that Munoz is believed to be the father of Fuentes' long-time girlfriend, Claudia Munoz, with whom Fuentes has an infant son.

20.     Utilizing their positions of authority within the company, Defendants Arab and Fuentes began submitting bids from Blit to Denarii for services, software, and hardware that Arab and Fuentes claimed Denarii needed.   Frequently, the Blit bids would be presented alongside a competing bid for the same products and services.   These "competitor" bids, unbeknownst to Denarii management, were also created by Arab and Fuentes, despite featuring company logos that appeared to be from legitimate providers (such as Dell Inc.).   Unsurprisingly, the Blit bids came out as the lowest bid in each and every case.

21.     After presenting the falsified bids to Denarii management – and after Blit had received the bid awards – Defendants Arab and Fuentes then began submitting invoices from Blit to Denarii for work allegedly performed, services purported to be rendered, and hardware that was represented as necessary for operations by Arab and Fuentes. Subsequent investigation has shown that the work, services, hardware and/or software billed for by Blit was not provided to Denarii, despite Denarii's payment of over $95,000 in fraudulent invoices submitted by Arab and Fuentes through their alter ego, Blit.   Nor was Blit able to lawfully provide various items they purported to "sell" to Denarii – such as Microsoft licensing – due to the fact that Blit is not a licensed Microsoft reseller.

### *The Plot to "End" Denarii*

22.     In a still more egregious attempt to misappropriate Denarii's proprietary and monetary assets, Defendants Arab and Fuentes began approaching their colleagues at Denarii with the idea of beginning their own company that would compete with Denarii, using Denarii's own proprietary software and source code.   Though Defendants Arab and Fuentes began

discussing this plan with other Denarii employees as early as January 2012, it was not until June 2012 that Defendants had solidified their plan, which they proceeded to lay out in detail at a breakfast meeting they held without notifying Denarii management.

23.     In June 2012 at the Marriott Hotel in South Beach, Defendants Arab and Fuentes told at least six other Denarii employees (including Defendant Alvarez) – whom Defendants had invited to the breakfast – of their plan to secretly develop a new card-processing platform while working for Denarii, before leaving to begin a competitor company.  As Defendants Arab and Fuentes explained, Denarii would pay these employees for their normal software engineering services, and the employees would use their time at Denarii and their expertise to develop a new, more efficient card-processing platform.  When the platform was fully developed and could support Visa and/or MasterCard transactions, the employees would take the platform's source code and begin their own company.  By taking both Denarii's employees and proprietary source code, the participants in the plan would be able to "end" Denarii and then take whatever clients Denarii had left.  Defendants Arab and Fuentes explained at the meeting that this new, competitor entity would be supported with funds from the minority shareholders of Denarii, including Jaime ("Jaimito") Costa and Edward ("Ted") Moffly, among others.  While Defendant Alvarez agreed to participate in the plan to misappropriate Denarii's proprietary source code with Defendants Arab and Fuentes, the remaining employees (including Carlos Alonso, Franco Ceruti, Javier Machin, Maybel Martin, and Humberto Moreno) were not successfully recruited to carry out the scheme.

24.     Despite the fact that other employees were unwilling to leave Denarii with Defendants Alvarez, Arab and Fuentes, Arab continued to reference his plan to leave Denarii and misappropriate Denarii's proprietary source code and corresponding software.  In one such

instance occurring in July 2012, Arab told Denarii employee Marcela Lazarte that the Denarii executives had "better stop messing" with him because he had Denarii's proprietary source code on a CD and was prepared to take it with him to Argentina should he decide to leave Denarii.

25.     Similar comments were echoed by Arab to Denarii executives when they began investigating the vendors and providers that had been paid by Denarii upon Arab's instruction and approval.   At a meeting between Arab and Denarii executives on October 17, 2012, Arab warned Denarii executives that they "had better not mess with the backbone of the company" [referring to himself], threatening that negative consequences would result from any action taken to investigate and/or terminate Arab and Fuentes.

### *Defendants' Departures*

26.     On October 19, 2012, after word of his misconduct reached management, Defendant Fuentes resigned from his position as Director of Software Development at Denarii. Prior to his resignation, Fuentes deleted his "gfuentes" user profile and overwrote the Windows registry file from the Denarii computer assigned to him, effectively erasing evidence of his activity on the company computer, as well as the documents saved on the computer.

27.     Despite his resignation, Fuentes was once more present in the office on October 22, 2012, and stated that he was considering the withdrawal of his resignation.   Denarii did not allow Fuentes to rejoin the Company's employ.

28.     On October 22, 2012, Defendant Arab was terminated by Denarii.   On the same day, Arab and/or Fuentes deleted Arab's "oarab" user profile from the Denarii computer assigned to him, creating in its place a profile entitled "omar" which contains no user documents or Internet history.   In addition, Arab and/or Fuentes also deleted all information and files from the iPhone assigned to Arab and owned by Denarii.

29.     On October 22, 2012, Defendant Alvarez was also terminated by Denarii.  Prior to this termination, on October 15, 2012, Alvarez copied and exported approximately 8,500 files (consisting of a significant portion of Denarii's proprietary source code, along with other intellectual property belonging to Denarii) and folders from his computer on a USB device. These files were specifically targeted because they contain the proprietary source code[1] and software for Denarii's platform.[2]

30.     Following Fuentes' resignation, Denarii management demanded that Defendant Fuentes turn over a list of administrative passwords to the Denarii network and servers.  This list was critical to Denarii management, as no one else at the company was in possession of a full list of this information.

31.     While Defendant Fuentes supplied a list of passwords to Denarii management, the company soon learned that several of the most important passwords supplied by Fuentes were inaccurate.  As further investigation revealed, the password list was also incomplete.

32.     On October 19, 2012, following Defendant Fuentes' resignation, Denarii changed the administrative passwords to its production, development and office networks.  As a result, Defendants Alvarez, Arab and Fuentes no longer had authorized access to these networks and their individual servers.

---

[1] Source code is a collection of computer instructions and notations, most commonly consisting of a human-readable computer language (such as text), which specifies the actions to be performed by a computer running a corresponding piece of software.  The Institute of Electrical and Electronics Engineers defines source code as "any fully executable description of a software system," and states that source code includes "machine code, very high level languages and executable graphical representations of systems."  In essence, strings of source code function as the building blocks of individual pieces of software.

[2] A platform or "computing platform" includes a hardware architecture and a software framework (including application frameworks), where the combination allows the software to run.  In simple terms, a platform is a computing system that serves as a place to launch software.

33.    On Sunday, October 21, 2012, Denarii discovered that its secure network had been breached.  During the breach, the intruder(s) accessed the Denarii servers, misconfigured the card-processing platform by altering settings and/or source code, and caused Denarii's system to lose contact with MasterCard.  As a result, no MasterCard transactions could be processed by Denarii from Sunday afternoon through mid-day Monday, October 22, 2012.

34.    Upon information and belief, this breach was caused by Defendants Arab and/or Fuentes.  To disguise their access to Denarii's production-side SQL Server (which hosts Denarii's production operations), it is believed that Arab and/or Fuentes created a false user profile entitled "ecadena"—referencing the owner of Denarii, Enrique Cadena.  Under the ecadena user profile, critical portions of the server log(s) were erased, despite the fact that Enrique Cadena had never previously been given access to the highly protected SQL Server.

35.    Subsequent investigation into the remaining server logs has revealed that the source of the access was through the system's main administrative account – to which only Defendants Arab and Fuentes had access until October 19, 2012, when Denarii changed the account's password.  Log data has also indicated that the infiltrator(s) accessed the Denarii network on Sunday, October 21, 2012, and was able to remove monitoring software that was put in place by Denarii to track any activity on the network.

36.    On October 21, 2012, Denarii came to realize that it had lost access to Denarii's main systems administrator account due to the critical password being changed by an outside source.  On information and belief, the only person previously able to modify this password (prior to his resignation on October 19, 2012) was Fuentes.  However, because the critical administrative passwords had been changed by Denarii on Friday, October 19, 2012, (immediately following Defendant Fuentes' resignation) any access by Alvarez, Arab and/or

Fuentes would not have been possible through the normal channels—as Alvarez, Arab and Fuentes were not privy to the new administrative passwords after they were changed on October 19, 2012. Instead, it would have been necessary for these individuals to "hack" into the network on October 21, 2012, exceeding any authorization from Denarii (which did not exist) to engage in this conduct.

37. As a result, Denarii employees and specialized contractors – including network administrative expert, Kesrick Grey – worked around the clock on Sunday, October 21 and Monday, October 22 to return ownership of the main administrative (Global Domain) password to Denarii and to ensure that Denarii's network was once more secure and able to process card transactions.

38. On Monday, October 22, 2012 – as soon as Denarii had once more gained control of its network – Denarii lost control of its email server, hosted by the cloud-based Microsoft Office 365 service.

39. While Denarii still does not have access to its company email database, the company has been working with Microsoft to establish its identity as the true owner of this account, and to stop the deletion of any further data and email communications from Denarii's email server.

40. As Microsoft has verified, control of Denarii email accounts was changed by a "system administrator" on Monday, October 22, 2012.

41. The registered "system administrator" for the Denarii Microsoft accounts was Fuentes. Upon information and belief, Fuentes was responsible for taking over account ownership and blocking Denarii's access to its email accounts.

42. The contents of the Denarii email accounts assigned to Arab and Fuentes were also erased during the intrusion, thus deleting data, communications, and other corporate information that is owned by Denarii and is potentially incriminating to Defendants.

43. Through the Office 365 service, Defendants were also able to delete data from the cellular telephones of company employees, which were linked to the Microsoft Office 365 service. As a result, Defendants deleted all data from the phones of Denarii employees Sebastian Cordovez and Ketty Rodriguez on Monday, October 22, 2012.

44. Denarii is still without access to the email accounts hosted by Microsoft Office 365, which remain within Defendants' control.

45. Despite the State Court's issuance of injunctive relief requiring turnover of the passwords, Defendants continue to withhold critical passwords for Denarii's network. These passwords include the correct usernames and passwords for the network switches, the SQL server, and the Global Domain (main administrative) password. Without this information, Denarii cannot access or configure significant portions of its network.

46. Defendants also remain in possession of Denarii's critical documentation and manuals which serve to map and explain the various components of the sophisticated Denarii network, as well as each server's role within the network. This documentation, belonging to Denarii and developed at Denarii's cost, was previously maintained in a DropBox folder controlled by Defendants, which has since been erased from Denarii's network. Such information is critical to any efforts to maintain or troubleshoot the existing network.

47. All conditions precedent to the institution, maintenance and prosecution of this action have been satisfied, waived, or are excused as futile.

## COUNT I –VIOLATION OF FLORIDA'S
## UNIFORM TRADE SECRETS ACT, FLA. STAT. §688
### *against Defendants Alvarez, Arab and Fuentes*

48.     Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

49.     Denarii is the developer and owner of proprietary source code utilized in running its card-processing platform.

50.     Denarii's source code constitutes a trade secret, as protected under Fla. Stat. §688.

51.     Denarii derives economic value from the source code based on the fact that this source code is not readily ascertainable by other parties and other card-processing enterprises.

52.     Denarii has taken reasonable steps to ensure that its source code remains secret, including limiting the number of individuals who have access to Denarii's source code and the servers which house this information.

53.     Defendants Alvarez, Arab and Fuentes had access to Denarii's proprietary source code as a result of their employment with Denarii and their high-level positions in overseeing Denarii's software development.

54.     Denarii's proprietary source code was maliciously misappropriated by Defendants Alvarez, Arab and Fuentes, who used improper means to obtain the source code for their own use and profit, including the exporting of over 8,500 files containing Denarii's source code onto a removable storage device on or about October 15, 2012.

55.     As a direct and proximate result of these Defendants' misappropriation of Denarii's trade secrets, Denarii has suffered actual damages in the form of those costs required to respond to Defendants' breach of the Denarii network and source code housed therein.

56.     Denarii faces further damage should these misappropriated trade secrets be used by, sold or distributed to another business enterprise.

57.     Denarii is entitled to both monetary damages and injunctive relief under Florida's Uniform Trade Secrets Act §§688.003-004.

58.     Denarii is entitled to an award of reasonable attorney's fees pursuant to §688.005.

59.     Denarii is entitled to exemplary damages pursuant to §688.004

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendants Frank Alvarez, Omar Arab and Greynier Fuentes for compensatory damages, exemplary damages, attorney's fees, prejudgment interest, injunctive relief enjoining the use, sale, and/or distribution of Plaintiff's proprietary trade secrets, costs, and all such other relief as this Court may deem appropriate.

## COUNT II – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030
### against Defendants Alvarez, Arab and Fuentes

60.     Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

61.     Denarii asserts this Count against Defendants Alvarez, Arab and Fuentes, jointly and severally, pursuant to §1030 of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030.

62.     Defendants Alvarez, Arab and Fuentes intentionally accessed the computers of Denarii without authorization and/or exceeded authorized access to the computers of Denarii, and thereby obtained information from the computers of Denarii in violation of 18 U.S.C. §1030(a)(2)(C).  These Denarii computers constitute "protected computers" under the Computer Fraud and Abuse Act, pursuant to §1030(e)(2)(B).

63.     During these Defendants' intentional and unauthorized access to the protected computers of Denarii, Defendants Alvarez, Arab and Fuentes obtained and exported over 8,500 files containing Denarii's intellectual property and proprietary source code onto a removable storage device, as well as deleted user profiles, documents, histories, and other files in violation of 18 U.S.C. §1030(a)(2)(C).

64.     Defendants Alvarez, Arab and Fuentes intentionally accessed the protected computers of Denarii without authorization, and by means of such conduct knowingly caused the transmission of a code or command designed to misconfigure Denarii's servers and disable Plaintiff's ability to process transactions within the MasterCard network in violation of 18 U.S.C. §1030(a)(5)(A).

65.     These Defendants did in fact disable the MasterCard network after taking administrative control of the Denarii network on Sunday, October 21, 2012.

66.     As a result of this misconfiguration, Defendants Alvarez, Arab and Fuentes intentionally caused damage without authorization to the protected computers of Denarii in violation of 18 U.S.C. §1030(a)(5)(A).

67.     In the alternative to the allegations set forth in Paragraphs 64 and 66, Defendants Alvarez, Arab and Fuentes intentionally accessed the protected computers of Denarii without authorization, and as a result thereof, *recklessly* caused damage to the protected computers of Denarii in violation of 18 U.S.C. §1030(a)(5)(B) by misconfiguring Denarii's servers and disabling Plaintiff's ability to process transactions within the MasterCard network in violation.

68.     In addition, Defendants Alvarez, Arab and Fuentes intentionally accessed the computers of Microsoft without authorization for the purpose of accessing and/or deleting Denarii email accounts and files, and thereby obtained information from the computers of

Microsoft in violation of 18 U.S.C. § 1030(a)(2)(C).  These Microsoft computers constitute "protected computers" under the Computer Fraud and Abuse Act, pursuant to §1030(e)(2)(B).

69.     Defendants Alvarez, Arab and Fuentes intentionally accessed the protected computers of Microsoft without authorization, and by means of such conduct knowingly caused the transmission of a code or command designed to delete data from Denarii email accounts and Denarii telephones issued to Denarii employees in violation of 18 U.S.C. § 1030(a)(5)(A).

70.     These Defendants did in fact delete Denarii files and individual email accounts after accessing Microsoft's protected computers.

71.     As a result of these deletions, Defendants Alvarez, Arab and Fuentes intentionally caused damage to the protected computers of Microsoft in violation of 18 U.S.C. §1030(a)(5)(A).

72.     In the alternative to the allegations set forth in Paragraphs 69 and 71, Defendants Alvarez, Arab and Fuentes intentionally accessed the protected computers of Microsoft without authorization, and as a result thereof, *recklessly* caused damage to the protected computers of Microsoft in violation of 18 U.S.C. §1030(a)(5)(B) by deleting data from Denarii email accounts and Denarii telephones issued to Denarii employees.

73.     Denarii has incurred substantial costs greatly exceeding five thousand ($5,000) in value in responding to the offenses committed by these Defendants, including investigating the facts and circumstances surrounding the offenses, conducting a damage assessment, attempting to restore data to the condition immediately prior to the commission of the offenses, attempting to restore the Denarii computer network to the condition immediately prior to the commission of the offenses, reconfiguring settings necessary to process MasterCard transactions and resume

normal business, and investing in additional security measures to protect the Denarii network from further intrusions.

74.      Plaintiff has been damaged as a direct and proximate result of these Defendants' acts.

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendants Frank Alvarez, Omar Arab and Greynier Fuentes for compensatory damages, prejudgment interest, costs and all such other relief as this Court may deem appropriate.

<u>**COUNT III – VIOLATION OF STORED COMMUNICATIONS ACT,**</u>
<u>**18 U.S.C. §§2701 & 2707**</u>
***against Defendants Arab and Fuentes***

75.      Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

76.      Microsoft's computer servers are facilities through which an electronic communication service is provided, including Microsoft's Office 365 electronic communication service.

77.      Denarii's computer servers are facilities through which an electronic communication service is provided, including Denarii's local corporate email services and electronic storage.

78.      Defendants Arab and Fuentes intentionally accessed without authorization Microsoft's and Denarii's computer servers, or Defendants intentionally exceeded an authorization to access Microsoft and Denarii's computer servers, and thereby, obtained access to electronic communications while such was in electronic storage, specifically the electronic mail communications of Denarii employees.

79. These Defendants' conduct in accessing, obtaining, stealing, and deleting Denarii's stored electronic communications without authorization, or in excess of an authorization, was with a knowing and/or intentional state of mind.

80. Defendants Arab and Fuentes' unlawful access to each of Denarii's stored electronic communications represents a violation of the Stored Communications Act, 18 U.S.C. §§2701 ("SCA").

81. Denarii has suffered actual damages in relation to these Defendants' violations of the SCA, including the costs associated with investigating the facts and circumstances surrounding the offenses, conducting a damage assessment, attempting to restore data to the condition immediately prior to the commission of the offenses, and investing in additional security measures to protect the Denarii email accounts from further intrusions.

82. Denarii has had its corporate communication, intellectual property, proprietary source code, trade secrets, and corporate information unlawfully accessed, trespassed upon, and stolen by Defendants.

83. Denarii is entitled to monetary damages for each violation of the SCA, of no less than $1,000 per violation, as provided by 18 U.S.C. § 2707(c).

84. Because the violations of the SCA were willful and intentional, Plaintiff additionally seeks punitive damages under 18 U.S.C. § 2707(c).

85. Denarii is also entitled to the reasonable attorney's fees and costs that it has, and will incur, in order to prosecute this action and vindicate its rights, as provided by 18 U.S.C. §2707(b).

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendants Omar Arab and Greynier Fuentes for compensatory damages,

punitive damages, prejudgment interest, attorney's fees, costs, and all such other relief as this Court may deem appropriate.

## COUNT IV – INJUNCTIVE RELIEF
### *against Defendants Alvarez, Arab and Fuentes*

86.     Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

87.     As more fully described herein, Denarii is the developer and owner of source code utilized in running its card-processing platform. Denarii's business relies upon this source code and its ability to support a functional and secure platform used to process millions of Visa and MasterCard transactions. Without a secure network and secure platform, Denarii's business and reputation as a transaction processor would be severely jeopardized.

88.     Defendants Alvarez, Arab and Fuentes, relying on their previous positions within Denarii and their intimate knowledge of Denarii's network system, have accessed the Denarii network without authorization and without approval. Through strategic interference with Denarii's servers, platform, account settings and email communications, Defendants Arab and Fuentes have crippled Denarii's day-to-day operations, and have refused to submit the information and passwords within their control which are required to ensure full functionality of the Denarii network. In addition, Defendants Alvarez, Arab and Fuentes have misappropriated portions of the proprietary source code developed and owned by Denarii.

89.     In light of Defendants Alvarez, Arab and Fuentes' improper conduct, Denarii is entitled to a temporary injunction without notice.

90.     Denarii will suffer irreparable harm if its own account and systems information continues to be wrongfully withheld from the company, in turn threatening the market value and overall viability of the company.

91.     Denarii has no adequate remedy at law for Defendants Alvarez, Arab and Fuentes' continued misconduct.  The entry of an injunction is necessary to require Defendants Alvarez, Arab and Fuentes to turn over the requested information, prohibit their unauthorized access to the Denarii network, and ensure that Denarii's proprietary source code is not used, distributed, or sold to other business entities.

92.     Given Defendants Alvarez, Arab and Fuentes' documented misconduct, there is a significant likelihood that Denarii will prevail on the merits of its claims regarding a violation of the Computer Fraud and Abuse Act, the Stored Communications Act, and Florida's Uniform Trade Secrets Act.  Denarii has a clear legal right to the relief requested.

93.     The damage to Denarii in the form of lost market share and harm to reputation outweighs any potential harm to Defendants, who would only be obligated to forego their unlawful conduct under the proposed injunction.

94.     Issuance of an injunction is consistent with public policy in protecting trade secrets and promoting legitimate business interests.

95.     Denarii is also entitled to injunctive relief relating to the actual or threatened misappropriation of its proprietary source code under §688.003 of Florida's Uniform Trade Secrets Act.

WHEREFORE, Plaintiff Denarii respectfully requests that this Court enter a temporary injunction:

(1) Enjoining Alvarez, Arab, Fuentes and all persons acting in concert, participation or combination with them:

      a.   from accessing Denarii's internal systems network;

    b.  from accessing Denarii's servers, responsible for running Denarii's processing platform;

    c.  from obtaining, modifying, or deleting any portion of Denarii's proprietary source code;

    d.  from obtaining, modifying, or deleting any stored electronic information and data housed within the Denarii system, including but not limited to, company email communications, documents, certifications for Denarii's products and services, documentation relating to the administrative functions of Denarii, and passwords; and

    e.  from obtaining, modifying, or deleting any of Denarii's stored documents kept in the DropBox folder removed by Arab and Fuentes.

(2) Prohibiting the use, modification, distribution, or sale of any portion of Denarii's proprietary source code.

(3) Requiring Defendants to immediately supply all passwords used to access Denarii's accounts and servers, including the main administrative passwords for Denarii's information systems, as well as passwords for Denarii's SQL servers, Denarii's network switches, Denarii's Microsoft Office 365 services, and all associated Denarii email accounts.

(4) Requiring Defendants to immediately turn over access to the DropBox folder and all documents previously kept therein which are the property of Denarii.

(5) Granting such other relief as this Court deems just and proper.

## COUNT V – CIVIL CONSPIRACY
### *against Defendants Alvarez, Arab and Fuentes*

96.     Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

97.     Defendants Alvarez, Arab and Fuentes cooperated and conspired to misappropriate Denarii's assets and proprietary source code and/or software in violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

98.     In furtherance of this conspiracy, Defendants Alvarez, Arab and Fuentes undertook multiple overt acts in pursuance of the conspiracy, which included unlawfully accessing Denarii's network and computer systems to misconfigure the systems and prevent Denarii from carrying out operations; unlawfully shutting down Denarii's access to its own Microsoft Office 365 account(s) and email services; unlawfully deleting multiple email accounts from the Denarii system and erasing data from Denarii cellular telephones; and unlawfully exporting over 8,500 files on or about October 15, 2012, which contained Denarii's proprietary source code and/or software, and misappropriating these files for Defendants' own use and/or sale.

99.     As a direct and proximate result of these Defendants' unlawful access to Denarii's computer systems, misconfigurations of Denarii's network(s), deletion of company email accounts and files, interference with Denarii's Company email communications, and misappropriation of Denarii's trade secrets, Denarii has suffered actual damages in the form of those costs required to respond to Defendants' breach of the Denarii network, email systems, individual computers, and proprietary source code.

100.    Denarii faces further damage should these misappropriated documents, files, and trade secrets be used by, sold or distributed to another business enterprise.

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendants Frank Alvarez, Omar Arab and Greynier Fuentes for compensatory damages, prejudgment interest, costs and all such other relief as this Court may deem appropriate.

## COUNT VI – FRAUD
### against Defendants Arab, Fuentes and Blit Technologies

101.    Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

102.    Defendants Arab, Fuentes, and Blit Technologies falsely represented to Denarii that various services, hardware, and software was being provided by Blit Technologies through invoices dated March 19, 2012; June 17, 2012; July 5, 2012; July 5, 2012, July 27, 2012, and August 14, 2012.  A true and correct copy of these invoices is attached to the Complaint as Composite Exhibit A.

103.    On or about March 19, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Fuentes and Denarii Systems LLC (attached to the Complaint within Composite Exhibit A) that Blit Technologies had sold to Denarii, at the cost of $62,573.00, a Microsoft "Licensing Package."  This Licensing Package was said to include: Microsoft Office Professional Plus 2010, Microsoft Project Professional 2010, Microsoft Visio Professional 2010, Microsoft Business Contact Manager 2010, Microsoft MapPoint North America 2011 or Microsoft MapPoint Europe 2010, Microsoft Lync Server 2010 Standard, Microsoft Exchange Server 2010 Standard, Microsoft Forefront Threat Management Gateway 2010 Standard, Microsoft SharePoint Server 2010 Enterprise,

Windows 7 Ultimate, Windows Server 2008 R2 Enterprise, Microsoft Team Foundation Server, Microsoft Dynamics CRM Workgroup Server 2011, and Microsoft Visual Studio 2010 Ultimate.

104.     In fact, this Microsoft "Licensing Package" was never provided to Denarii.  Nor could Blit lawfully deliver such a package, as Blit Technologies is not an authorized reseller or agent of Microsoft.

105.     The statements contained within the March 19, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoices were submitted, as the software and/or hardware referenced in the invoice was never provided by Blit Technologies to Denarii.  Arab and Fuentes, as employees of Denarii, knew that these licenses had never been provided to Denarii, and were also aware of the fact that Blit Technologies was not authorized to sell Denarii licenses on behalf of Microsoft.

106.     The statements contained within the March 19, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services, hardware, and software that was never provided.

107.     Denarii acted in reasonable reliance on the correctness of the statements contained within the March 19, 2012 invoice, as evidenced by Denarii's payment of $62,573.00 to Blit Technologies, made on or about March 19, 2012.

108.     Damage resulted to Denarii through the payment of $62,573.00 for the falsified March 19, 2012 invoice that was submitted to Denarii by Defendants for work never performed and goods never delivered.

109.     On or about June 17, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Fuentes and Denarii Systems LLC (attached to the Complaint within Composite Exhibit A) that Blit Technologies

had provided Denarii, at the cost of $5,440.00, with 80 hours of "C# .Net Developer work from 5/21/2012 to 6/17/2012."

110.    The statements contained within the June 17, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoice was submitted, as the services referenced in the invoice were never provided by Blit Technologies to Denarii.   Arab and Fuentes, as employees of Denarii, knew that this work had never been performed.   Blit Technologies also knew that this work had not been performed by itself or its employees.

111.    The statements contained within the June 17, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never provided.

112.    Denarii acted in reasonable reliance on the correctness of the statements contained within the March 19, 2012 invoice, as evidenced by Denarii's payment of $5,440.00 to Blit Technologies, made on or about June 29, 2012.

113.    In addition, this identical false invoice was submitted to Denarii a second time for payment, such that Denarii made an additional payment of $5,440.00 to Blit Technologies on or about August 23, 2012.

114.    Damage resulted to Denarii through the payment of $10,880.00 for the falsified June 17, 2012 invoice that was submitted **twice** to Denarii by Defendants for work never performed and services never rendered.

115.    On or about July 5, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Arab and Denarii Systems LLC (attached to the Complaint within Composite Exhibit A) that Blit Technologies had

provided Denarii, at the cost of $2,720.00, with 40 hours of "C# .Net Developer work from 6/18/2012 to 7/1/2012."

116.     The statements contained within the July 5, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoice was submitted, as the services referenced in the invoice were never provided by Blit Technologies to Denarii.  Arab and Fuentes, as employees of Denarii, knew that this work had never been performed.  Blit Technologies also knew that this work had not been performed by itself or its employees.

117.     The statements contained within the July 5, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never provided.

118.     Denarii acted in reasonable reliance on the correctness of the statements contained within the July 5, 2012 invoice, as evidenced by Denarii's payment of $2,720.00 to Blit Technologies, made on or about July 30, 2012.

119.     Damage resulted to Denarii through the payment of $2,720.00 for the falsified July 5, 2012 invoice that was submitted to Denarii by Defendants for work never performed and services never rendered.

120.     On or about July 5, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Arab and Denarii Systems (attached to the Complaint within Composite Exhibit A) that Blit Technologies had sold Denarii, at the cost of $16,000,00, "Exchange Server 2010 setup and configuration" and "SharePoint 2010 setup and configuration."

121.     The statements contained within the July 5, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoice was submitted, as the services

referenced in the invoice were never provided by Blit Technologies to Denarii.   Arab and Fuentes, as employees of Denarii, knew that this work had never performed.   Blit Technologies also knew that this work had not been performed by itself or its employees.

122.   The statements contained within the July 5, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never provided.

123.   Denarii acted in reasonable reliance on the correctness of the statements contained within the July 5, 2012 invoice, as evidenced by its payment of $8,000.00 to Blit Technologies, made on July 12, 2012, and its subsequent payment of an additional $8,000.00 to Blit Technologies, made on or about August 31, 2012.

124.   Damage resulted to Denarii through the payment of $16,000.00 for the falsified July 5, 2012 invoice that was submitted to Denarii by Defendants for work never performed and goods never delivered.

125.   On or about July 27, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Arab and Denarii Systems (attached to the Complaint within Composite Exhibit A) that Blit Technologies had provided Denarii, at the cost of $1,360.00, with 20 hours of "C# .Net Developer work from 7/16/2012 TO 7/22/2012."

126.   The statements contained within the July 27, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoice was submitted, as the services referenced in the invoice were never provided by Blit Technologies to Denarii.   Arab and Fuentes, as employees of Denarii, knew that this work had never been performed.   Blit Technologies also knew that this work had not been performed by itself or its employees.

127.    The statements contained within the July 27, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never provided.

128.    Denarii acted in reasonable reliance on the correctness of the statements contained within the July 27, 2012 invoice, as evidenced by its payment of $1,360.00 to Blit Technologies, made on or about August 21, 2012.

129.    Damage resulted to Denarii through the payment of $1,360.00 for the falsified July 27, 2012 invoice that was submitted to Denarii by Defendants for work never performed and services never rendered.

130.    On or about August 14, 2012, Defendants Arab, Fuentes and Blit Technologies falsely represented to Denarii through an invoice addressed to Defendant Arab and Denarii Systems (attached to the Complaint within Composite Exhibit A) that Blit Technologies had provided Denarii, at the cost of $1,870.00, with 34 hours of "Development work of the Denarii Website."

131.    The statements contained within the August 14, 2012 invoice were known by Arab, Fuentes and Blit Technologies to be false at the time the invoice was submitted, as the services referenced in the invoice were never provided by Blit Technologies to Denarii.  Arab and Fuentes, as employees of Denarii, knew that this work had never been performed.  Blit Technologies also knew that this work had not been performed by itself or its employees.

132.    The statements contained within the August 14, 2012 invoice were made for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never provided.

133.     Denarii acted in reasonable reliance on the correctness of the statements contained within the August 14, 2012 invoice, as evidenced by its payment of $1,870.00 to Blit Technologies, made on or about August 21, 2012.

134.     Damage resulted to Denarii through the payment of $1,870.00 for the falsified August 14, 2012 invoice that was submitted to Denarii by Defendants for work never performed and services never rendered.

135.     In total, damage resulted to Denarii through the payment of $95,403.00 of false invoices that were submitted by Defendants for work never performed, services never rendered, and goods never delivered.

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendants Omar Arab, Greynier Fuentes and Blit Technologies for compensatory damages, prejudgment interest, costs and all such other relief as this Court may deem appropriate.

## COUNT VII – UNJUST ENRICHMENT
### *against Defendant Blit Technologies*

136.     Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

137.     Denarii conferred a benefit on Defendant Blit Technologies in the form of $95,403.00 in payments for false invoices dated March 19, 2012; June 17, 2012; July 5, 2012; July 5, 2012, July 27, 2012, and August 14, 2012.  A true and correct copy of these invoices is attached to the Complaint as Composite Exhibit A.

138.     Blit Technologies voluntarily accepted and retained the benefit conferred, despite the fact that Blit Technologies performed no work, rendered no services, and delivered no hardware or software, as detailed in its invoices.

139.    Because Blit Technologies performed none of the work and provided none of the hardware or software that was billed to Denarii, the circumstances are such that it would be inequitable for Defendant Blit Technologies to retain the benefit without paying the value thereof to the Denarii.

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendant Blit Technologies Corp. for compensatory damages, prejudgment interest, costs and all such other relief as this Court may deem appropriate.

### COUNT VIII – FRAUD
*against Defendant Arab*

140.    Denarii readopts and incorporates by reference the allegations contained in paragraphs 1 through 47 of this Complaint as if fully stated herein.

141.    Defendant Arab falsely represented to Denarii that Alberto Padin and/or Optimus Consulting Services was performing work for Denarii.  As part of this representation, Arab approved invoices from Optimus and Padin dated February 27, 2012; March 30, 2012; April 30, 2012; May 28, 2012; June 26, 2012; July 28, 2012; August 28, 2012; and September 28, 2012, for work that was never performed.  These invoices totaled $84,000.00 for purported services as a "Project Manager" and "Sr. Data Base." A true and correct copy of these invoices is attached to the Complaint as Composite Exhibit B (with financial account information redacted).

142.    In truth, the foregoing services were never provided.

143.    Defendant Arab knew these statements to be false at the time they were made, as he was aware that no work was being performed by his friend and former business partner, Alberto Padin (and/or Optimus Consulting Services) on behalf of Denarii.

144.     Arab made these statements and submitted these false invoices for the purpose of inducing Denarii to act in reliance thereon, and tender payment for services that were never performed.

145.     Denarii acted in reasonable reliance on the correctness of the statements contained within the invoices as approved by Defendant Arab, as evidenced by its payment of the invoices on or about March 2, 2012 (in the amount of $10,500, for payment of the February 27, 2012 invoice); April 4, 2012 (in the amount of $10,500, for payment of the March 30, 2012 invoice); May 7, 2012 (in the amount of $10,500, for payment of the April 30, 2012 invoice); May 31, 2012 (in the amount of $10,500, for payment of the May 28, 2012 invoice); July 2, 2012 (in the amount of $10,500, for payment of the June 26, 2012 invoice); August 9, 2012 (in the amount of $10,500, for payment of the July 28, 2012 invoice); August 31, 2012 (in the amount of $10,500 for payment of the August 28, 2012 invoice); and October 3, 2012 (in the amount of $10,500.00, for payment of the September 28, 2012 invoice).

146.     Damage resulted to Denarii through the payment of $84,000.00 of false invoices that were approved by Defendant Arab for services that were never performed.

WHEREFORE, Plaintiff Denarii respectfully requests that judgment be entered in its favor and against Defendant Omar Arab for compensatory damages, prejudgment interest, costs and all such other relief as this Court may deem appropriate

## <u>JURY TRIAL DEMAND</u>

Denarii demands trial by jury on all issues so triable.

Respectfully submitted,


HALL, LAMB AND HALL, P.A.
*Attorneys for Plaintiff*
2665 South Bayshore Drive, PH1
Miami, Florida 33133
TEL. 305-374-5030
FAX.   305-374-5033
adamhall@hlhlawfirm.com


By: /s/ Adam S. Hall
_____
     ADAM S. HALL
     FBN: 109983
     COLLEEN L. SMERYAGE
     FBN: 100023

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 10, 2013, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day via the Court's CM/ECF system on:

Gomm & Smith, P.A.
*Attorneys for Defendants*
*Omar Arab and Greynier Fuentes*
175 SW 7th Street, Suite 2110
Miami, Florida 33130
TEL. 305-856-7723
FAX. 786-220-8265
kristin.drecktrah@gommsmith.com
quinn.smith@gommsmith.com

Law Office of Rick Yabor, P.A.
*Attorneys for Defendant*
*Frank Alvarez*
9990 SW 77th Avenue, PH 9
Miami, FL 33156
TEL. 305-779-5901
FAX. 305-779-5902
rick.yabor@yaborlaw.com

Astigarraga, Davis, Mullins & Grossman, P.A.
*Attorneys for Defendant*
*Blit Technologies Corp.*
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
TEL.  305-372-8282
FAX. 305-372-8202
rkruse@astidavis.com
emullins@astidavis.com

By: /s/ Adam S. Hall_____
ADAM S. HALL