UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 12-24239-CIV-O'SULLIVAN

DENARII SYSTEMS, LLC,

    Plaintiff,

v.

OMAR ARAB,
GREYNIER FUENTES, and
FRANK ALVAREZ, individuals, and
BLIT TECHNOLOGIES CORP.,
a Florida corporation,

    Defendants.
_____/

**RESPONSE OF ARAB AND FUENTES IN OPPOSITION TO DENARII'S MOTION TO STRIKE AMENDED COUNTERCLAIM AS AN UNAUTHORIZED PLEADING AND ALTERNATIVE MOTION TO DISMISS AMENDED COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

The defendants, Omar Arab ("Arab") and Greynier Fuentes ("Fuentes"), by and through the undersigned counsel, hereby file their Response in Opposition to the Motion to Strike as Unauthorized Pleading and Alternative Motion to Dismiss Amended Counterclaim filed by Denarii Systems, LLC ("Denarii"), and in support thereof state the following:

### INTRODUCTION

Once again, Denarii has fished for technical arguments to gain a tactical advantage over Arab and Fuentes. Denarii bases its motion to strike on a deadline that has long passed – a deadline upon which Denarii changed the entire course of the proceedings. Meanwhile, Denarii bases its motion to dismiss on speculation and old arguments to certain claims, the prior defects of which Arab has cured. Speculation and stale arguments are not standards for dismissing claims. In sum, Arab and Fuentes have met their burdens at this stage, and their amended counterclaims must stand.

*Denarii Systems, LLC v. Arab et al.*
Case No.: 12-24239-CIV-O'SULLIVAN

**BACKGROUND**

Arab and Fuentes filed their first Answer, Affirmative Defenses, and Counterclaims [DE 4] on December 6, 2012, after removing the action to federal court. In response, Denarii moved to strike certain affirmative defenses and moved to dismiss the counterclaims [DE 15]. Arab and Fuentes moved to amend their affirmative defenses [DE 22]. A hearing on the motions to strike and to dismiss took place on February 11, 2013, at which time the Court also conducted a scheduling conference with the parties to confirm deadlines in this case. After the hearing, the Court issued an Order on Denarii's Motion to Strike and Motion to Dismiss [DE 28] and a separate Order Setting Pretrial Conference and Trial Date (the "Scheduling Order") [DE 29]. At the hearing, counsel for Denarii acknowledged to the Court that Denarii would be seeking leave to file an amended complaint by the deadline to amend pleadings, which was the Friday of that week, February 15, 2013.

The Order on Denarii's motions [DE 28] granted the motion to dismiss the counterclaims without prejudice, denied the motion to strike counterclaims, and granted in part the motion filed by Arab and Fuentes for leave to file amended affirmative defenses. Notably, the Order did not provide a deadline for Arab and Fuentes to file amended counterclaims. *See* DE 28 pp. 6-8. On the other hand, the Court granted Arab and Fuentes leave to amend their affirmative defenses by a specific date. *See id.* p. 16.

Denarii's Amended Complaint (the "First Amended Complaint") filed on February 26, 2012, added two defendants – Frank Alvarez ("Alvarez") and Blit Technologies Corp. ("Blit"). *See* DE 34. The First Amended Complaint made new allegations against Arab and Fuentes in addition to the allegations against Alvarez and Blit. Denarii doubled the causes of action in the First Amended Complaint, alleging claims of civil conspiracy, unjust enrichment, and fraud. In the initial Complaint, Denarii alleged that Arab and Fuentes did not provide passwords. *See* DE 1-2 ¶ 17. In the First Amended Complaint, Denarii altered its theory, alleging that Arab and Fuentes had delivered the correct passwords and then engaged in some sort of "hacking." *See* DE 34 ¶¶ 30, 35. Denarii further alleged that Arab and Fuentes had concocted a separate fraudulent scheme using invoices and work not completed. *See id.* ¶¶ 16-21. Nothing in the original Complaint contains these allegations. In other words, Denarii's First Amended Complaint dramatically altered the theory of the case and the scope of the proceedings.

2

Arab and Fuentes moved to dismiss all allegations as against them in the First Amended Complaint. Alvarez, once served, joined in on the Motion to Dismiss [DE 39]. On May 31, 2013, the Court partially granted and partially denied the Motion to Dismiss, ordering Denarii to amend certain parts of its complaint by June 10, 2013. Denarii then filed its Second Amended Complaint [DE 70], which Arab and Fuentes answered with its amended affirmative defenses and counterclaims [DE 72]. The amended affirmative defenses and counterclaims contained information only recently discovered. Since Arab and Fuentes moved to dismiss the First Amended Complaint, their Answer, Affirmative Defenses, and Amended Counterclaims [DE 72] was the first answer after Denarii drastically changed its pleading.

## MEMORANDUM OF LAW

**I.     Denarii's Motion to Strike Must Be Denied**

A motion to strike a portion of a pleading under Rule 12(f) is appropriate for a court to eliminate "any redundant, immaterial, impertinent, or slanderous matter." Fed. R. Civ. P. 12(f). Striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Regions Bank v. Commonwealth Land Title Ins. Co.*, 20120 U.S. Dist. LEXIS 158984, at *6 (S.D. Fla. Nov. 5, 2012). Courts view motions to strike with disfavor and generally deny such motions "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* at *7 (internal citations omitted); *see also Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991).

   A.     <u>Nothing in Rule 12(f) Supports the Motion to Strike</u>

Denarii has failed to identify any part of the Amended Counterclaims that is "redundant, immaterial, impertinent, or slanderous." Rule 12(f) sets the standard, and at a bare minimum, Denarii should have asserted the text of the rule, not a line plucked from a case. For this reason alone, the Court should deny the Motion to Strike.

Turning to the content of the Motion to Strike, Denarii's attempts at pointing out non-compliance on the part of Arab and Fuentes are misleading. None of the parties has operated under the deadline that resulted from the first scheduling conference. The parties have amended their claims and affirmative defenses as the Court has required, and the initial deadline of February 15, 2013, could not have applied after Denarii added two new parties, the parties jointly moved for a continuance, and the Court reset discovery deadlines.

Denarii's attempts to rely on one Order [DE 29] while all but disregarding the other Order [DE 28] require an even broader logical leap. The controlling Order [DE 28] specifically ruled on the affirmative defenses and counterclaims raised by Arab and Fuentes in response to Denarii's original pleading. As mentioned above, the controlling Order [DE 28] dismissed without prejudice two counterclaims, providing no deadline for the filing of amended counterclaims while conversely providing a deadline for the filing of amended affirmative defenses. Stated simply, the Order cited by Denarii offers little help in determining the issue at hand.

Moreover, the new counterclaims of Arab and Fuentes did not mature until after Denarii's First Amended Complaint [DE 34], which alleged new facts, and until after other developments that unearthed even more pertinent issues. Arab and Fuentes were unaware of many of these facts related to their new counterclaims prior to the First Amended Complaint. Thus, as a practical matter, Arab and Fuentes could not have filed their amended counterclaims at an earlier date.

  B. <u>Since Denarii Dramatically Altered the Scope and Theory of its Pleading, Arab and Fuentes Filed Anew</u>

Under the Federal Rules, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007). When an amended complaint changes the theory or scope of the case, a defendant may plead anew in response to that amended complaint. *See Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011). Under those circumstances, it would be inequitable to allow the plaintiff to amend its complaint "without permitting the defendant to completely plead anew." *Brown v. E.F. Hutton & Co.*, 61 F. Supp. 76, 78 (S.D. Fla. 1985).

In amending its complaint, Denarii added two defendants; added four counts, including civil conspiracy and fraud; and altered and/or supplemented a handful of critical facts. In other words, Denarii changed the face of the complaint considerably. By adding new causes of action requiring heightened pleading standards, Denarii further altered its theory, and by tacking on defendants, Denarii enhanced the scope. Denarii moved from alleging Arab and Fuentes failed to turn over the passwords to alleging some sort of "hacking" scheme. Denarii then cobbled together a series of assumptions regarding Mr. Alvarez to concoct a conspiracy, and Denarii

alleged an invoicing scheme where Arab and Fuentes took kickbacks — a claim wholly unrelated to the counts regarding access. As a result, the new allegations, defendants, and causes of action contributed to a substantially widened theory and scope of the case, reviving the right of Arab and Fuentes to replead.

For these reasons stated above, Denarii's motion to strike the amended counterclaims must be denied. In an abundance of caution, and should the Court find that Arab and Fuentes had an obligation to comply with the Scheduling Order [DE 29], Arab and Fuentes ask that the Court allow amendment of the counterclaims pursuant to their forthcoming Cross-Motion for Leave to File Amended Counterclaims.

## II. Denarii's Motion to Dismiss Must Be Denied

A motion to dismiss a counterclaim under Federal Rule 12(b)(6) is akin to a motion to dismiss a complaint. *See Great Am. Assurance Co. v. Sanchuk, LLC*, 2012 U.S. Dist. LEXIS 7477, at *2 (M.D. Fla. Jan. 23, 2012). The court shall take all allegations as true and construe them in the light most favorable to the pleading party. *See Regions Bank v. Commonwealth Land Title Ins. Co.*, 2012 U.S. Dist. LEXIS 158984, at *7 (S.D. Fla. Nov. 6, 2012). A counterclaimant's pleading need only articulate "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. The Florida Wiretap Act Count Alleged by Arab and Fuentes States a Claim

Section 934.03 of the Florida Statutes establishes criminal penalties for any person who "(a) intentionally intercepts . . . any wire, oral, or electronic communication . . . (b) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication . . . ." Florida's wiretap law is more stringent than its federal counterpart, "evinc[ing] a greater concern for the protection of one's privacy interests . . . ." *Guilder v. State*, 899 So. 2d 412, 417-18 (Fla. 4th DCA 2005). While federal law permits interception of a communication if one party consents, Florida's law requires *all* parties to consent to the interception, use, or disclosure. *See Brugmann v. State*, 2013 Fla. App. LEXIS 9297 (Fla. 3d DCA June 12, 2013). For an oral conversation to be protected under the statute, the speaker must have both a subjective expectation of privacy and an

expectation that society is willing to accept as reasonable. *See Migut v. Flynn*, 131 F. App'x 262, 265 (11th Cir. 2005).

Arab and Fuentes have pled facts sufficient to meet the standards required by law. At all relevant times, Arab and Fuentes were completely oblivious to the fact that Ceruti, as an agent of Denarii, was recording their private meetings. Arab and Fuentes did not consent to Ceruti's recording of the conversations. *See* DE 72 ¶ 160. Likewise, they had no knowledge that Denarii had possession of the recordings until Arab learned of Mytnik's improper disclosure to third parties, namely his potential employers. *See id.* ¶ 161. Contrary to the arguments made in Denarii's attempt at dismissing this counterclaim, Arab and Fuentes expected secrecy of these meetings held in confidence, and Ceruti disregarded the collective notion of secrecy. Ceruti's breach was an invasion of privacy, of which Arab and Fuentes had a reasonable expectation. As a result, their counterclaim stands firm and survives Denarii's motion to dismiss.

> 1.  *Denarii waives all but one defense as to the recordings*

Preliminarily, it is notable that Denarii admits to having knowledge of the secret recordings that are the subject of this counterclaim, including the individuals present. *See* DE 74 at 10 n.1. To cite to the content of the recordings, Denarii must have possession of the tapes and a translation of the transcript — something Arab and Fuentes do not have at the present date. In fact, the only argument Denarii presents to support its motion to dismiss as to the count alleging violation of the Florida Wiretap Act relates to the expectation of privacy, claiming that a bright-line rule against the expectation of privacy in an office exists. *See id.* at 9-11. Putting aside the expectation of privacy issue for a moment, which will be addressed below, Denarii has then admitted to the existence of the tapes, as well as the content of the tapes. As a result, Denarii has waived all other possible arguments against the existence and use of the tapes.

> 2.  *Arab and Fuentes had an expectation of privacy that was reasonable*

To determine whether an aggrieved party had an expectation of privacy, courts look to the circumstances surrounding the communication. *See Brugmann v. State*, 2013 Fla. App. LEXIS 2927, at *27 (Fla. 3d DCA June 12, 2013). Factors for analyzing the expectation of privacy may include the following: (1) location; (2) manner of the communication; (3) nature of the communication; (4) intent of the speaker asserting protection under the statute; (5) purpose of the communication; (6) conduct of the speaker; (7) number of individuals present; and (8)

content of the communication. *See id.* Regarding location, at least one court has noted that "under Florida law, public places are not necessarily excluded from the statute . . . ." *Migut v. Flynn*, 131 Fed. App'x 262, 264 (11th Cir. 2005). If communications take place in an office setting, courts look to whether the employer has in place any relevant policies governing privacy and/or communications. *See, e.g.*, *United States v. Scushy*, 2005 U.S. Dist. LEXIS 42842, at *8-11 (N.D. Ala. Jan. 21, 2005) (describing company policies regarding electronic communications and searches of work spaces to examine employee's expectation of privacy).

To add, surreptitious recordings taken in office settings do not preclude an individual from asserting a reasonable expectation of privacy. In fact, many courts have found parties possessed a reasonable expectation in a place of business. *See Horning-Keating v. Emplrs. Ins. of Wausau*, 969 So. 2d 412, 419 n.4 (Fla. 5th DCA 2007). In *Horning-Keating,* the court found that a claim for unlawful disclosure of secretly recorded conversations – taken in an office – pursuant to Chapter 934 was an actionable wrong. *See id.* at 419. The court found that the "case law is to the contrary" of the defendants' argument claiming no expectation of privacy existed in an office setting. *See id.* at 419 n.4.

In this case, the allegations of Arab and Fuentes illustrate their subjective expectation of privacy and their objectively reasonable expectation of privacy. The location of the recorded meetings was in Arab's office at Denarii. *See* DE 72 ¶¶ 174-176. The meetings were private, and the parties intended the communications to be secret. *See id.* The purpose of the meeting was to discuss information that the parties did not want disclosed to third parties, especially not to other Denarii employees. *See id.* ¶¶ 176-178. Only a few individuals were present at these meetings; in addition to Arab, Fuentes, and Ceruti, Carlos Alonso and Frank Alvarez were present. The purpose of the meetings was not to discuss criminal acts, and the content of the recordings would reflect the inexistence of criminal activity. Denarii never mentioned a company policy that would lessen an individual's expectation of privacy within the office. Without such a policy in place, one cannot reasonably say that the secretive taping of a closed-door meeting did not violate an expectation of privacy.

Ceruti recorded closed-door meetings with only a few individuals who were oblivious to Ceruti's secretive act of recording. Given the subject matter of the meetings – based on what Arab and Fuentes now know and what Denarii states – the individuals present would obviously

not want other Denarii personnel to know. The individuals present believed they were holding private meetings between themselves and had a reasonable expectation that the content of the meetings would remain private.

### 3. *The cases relied upon by Denarii are inapposite and inapplicable*

The decisions regarding expectation of privacy cited by Denarii are irrelevant to the case at hand. In *Morningstar v. State*, 428 So. 2d 220 (Fla. 1982), the Florida Supreme Court sought only to define an expectation of privacy that society would support. The defendant sought to suppress recordings of what he thought were private conversations by telephone and in person while he was in his office. *See id.* at 221. Law enforcement had placed monitors on the defendant's telephone to record the conversations, while a "body bug" taped the in-person conversations to aid in an investigation concerning stolen jewelry that the defendant had accepted. *See id.* The recorded conversations were between the defendant and one or two other people who, cooperating with law enforcement, had consented to the recordings. *See id.* On appeal, the Florida Supreme Court found that §934.03(2)(c), Fla. Stat. specifically permitted law enforcement to intercept the defendant's communications regarding the commission of a crime. The decision and reasoning are far from applicable in this case.

In *Morningstar*, the court did not state that an expectation of privacy in an office did not exist. Rather, the court noted that the defendant may have had a reasonable expectation of privacy in his office, yet it was not an expectation that society would support under the circumstances. *See Morningstar*, 428 So. 2d at 221. This last phrase defined the Court's holding and shaped its reasoning. The circumstances, *i.e.*, criminal activity, did not warrant protection of the defendant's expectation of privacy, and the Court (unremarkably) found that society should not support an expectation of privacy for the commission of crimes.

Applied to the facts as alleged, *Morningstar* does little to help Denarii's arguments. It does not create the bright-line test Denarii seeks. In fact, *Morningstar* reaches arguably the opposite conclusion—an expectation of privacy could have existed in the workplace. Denarii has not argued the specific content of the conversations warrants a separate expectation of privacy that society would not support. And there is no allegation of criminal activity (nor could there be) in the recordings. In short, *Morningstar* stands hardly anything of value to Denarii's arguments.

Turning Denarii's other case, the arguments are even weaker. In *Cohen Bros., L.L.C. v. ME Corp., S.A.*, 872 So. 2d 321 (Fla. 3d DCA 2004), two individuals from an Argentine company secretly recorded two shareholder meetings by telephonic conference. *See id.* at 323. The plaintiffs in this action learned of the recordings after the defendants initiated an action in New York and the tapes were revealed through discovery. *See id.* The plaintiffs then brought their action in Florida to allege a violation of the Florida Wiretap Act. The defendants moved to dismiss on the ground that the court lacked jurisdiction. Specifically, none of the parties were residents of Florida, the tapings did not take place in Florida, and none of the parties used or disclosed the contents of the recordings in Florida. The lower court granted the motion to dismiss for lack of jurisdiction, and the appellate court affirmed dismissal. In other words, the Court did not analyze the expectation of privacy; it merely engaged in a lesson in personal and subject-matter jurisdiction.

*Cohen Bros.* could hardly be more irrelevant to the facts at hand. Denarii is not asserting a lack of personal or subject matter jurisdiction. This Court is handling a motion to dismiss based on a failure to state a claim—a wholly different issue. And Denarii should not be allowed to merely note an instance where a plaintiff failed to plead facts supporting jurisdiction and then turn the case into something it is not. In short, Denarii's reliance on these two cases is misguided.

B.  <u>Arab States a Claim for Violation of the Florida Whistleblower Act ("FWA")</u>

Under §448.102(3), Fla. Stat., "[a]n employer may not take any retaliatory personnel action against an employee because the employee has [o]bjected to, refused to participate in, any activity, policy, or practices of the employer which is in violation of a law, rule, or regulation." An aggrieved employee may initiate a civil claim for the adverse employment action under §448.102(3), Fla. Stat. Federal courts in Florida analyze FWA claims under the same framework as Title VII claims. *See Gleason v. Roche Labs., Inc.*, 745 F. Supp. 2d 1262, 1270, (M.D. Fla. 2010). As a result, the claimant must establish a prima facie case showing the following: (1) the claimant objected to or refused to participate in the unlawful activity; (2) the claimant suffered an adverse employment action; and (3) a causal relationship exists between the objection and the employment action. *See id.*

Here, Arab has pled that Denarii was engaged in unlawful practices with the Ecuadorean Social Security Institute ("IESS"). *See* DE 72 ¶¶ 185-94. Specifically, Denarii entered into a

contract with the IESS in April, 2012, purportedly to target Ecuadoreans living abroad as customers for a pre-paid card program. *See id.* ¶ 158. The IESS awarded Denarii a US$3,000,000 advance payment, yet the program was a failure. The government launched a formal investigation against the executives of the IESS who were responsible for this contract, finding that the parties never received the required authorization to use US$3,000,000 of public funds to make an advance payment to Denarii. In other words, Arab has pled the parties engaged in corruption and fraud. *See id.*

Arab learned of Denarii's corrupt practices while on a business trip to Ecuador in late September through early October, 2012. Upon his return, Arab brought Denarii's corrupt practices abroad to the attention of upper management in Denarii, objecting to those practices. Days later, Denarii fired Arab from his position as CIO with an explanation that he had engaged in significant misconduct. The timeline of the chain of events coupled with the inexistence of any allegation or proof of misconduct on Arab's end illustrate how Denarii's reasons for firing Arab were merely pretext to cover up its retaliatory action against Arab for whistleblowing.

  C. <u>Amended Pursuant to Court Order, Arab's Breach of Employment Agreement Count States a Claim</u>

A breach of contract claim in Florida requires the existence of "(1) a valid contract; (2) a material breach; and (3) damages." *Kaloe Shipping Co. v. Goltens Serv. Co.*, 315 Fed. Appx. 877, 880 (11th Cir. 2009) (internal citations omitted). The existence of a valid contract hinges upon the existence of (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement. *See Fodere v. Pablo Lorenzo & Compacstone USA, Inc.*, 2011 U.S. Dist. 10905, at *15-16 (S.D. Fla. Feb. 3, 2011) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375 (Fla. 2004)).

Arab amended his counterclaim for breach of employment agreement against Denarii to sufficiently allege the elements of a contract. Arab has alleged that from the outset of his employment, he received his pay in two forms. *See* DE 72 ¶¶ 153,. 197. Arab has alleged that he did not receive the entirety of his pay for the month of October 12, 2012. *See id.* ¶ 203. Denarii seems to argue that Arab's amended counterclaim is improper because the claim does not allege the US$10,000 payments came from the outset of Arab's employment. Yet Arab has alleged exactly that – his acceptance of his position with Denarii as CIO was contingent upon two forms

of payment. *See id.* ¶ 198. As a result, any reliance on the need for additional and separate consideration lacks merit, and Denarii's attempts to throw out Arab's count for breach of employment fall flat.

### D. Amended Pursuant to Court Order, Arab's Unjust Enrichment Count States a Claim

As acknowledged by the Court [DE 28] and Denarii [DE 74], he elements of a claim for unjust enrichment are (1) a benefit conferred upon a party, (2) appreciation of the benefit, and (3) "acceptance and retention of the benefit under circumstances that would make it inequitable for him to retain it without paying the value thereof." *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (internal citations omitted). In other words, unjust enrichment is an equitable remedy intended to even out the scale in favor of a party conferring a benefit yet not receiving the proper reward in return.

In seeking to dismiss Arab's amended counterclaim for unjust enrichment, Denarii relies on its assumption that two forms of payment require an additional benefit conferred upon Denarii. That assumption is groundless. Further, Arab's amended counterclaim for unjust enrichment has cured any defect existing in his original claim. Just as in the count for breach of employment agreement, Arab makes clear that he received two forms of payment from the outset of his employment and expected to receive those two forms until the end of his time with Denarii. *See* DE 72 ¶¶ 153, 197. As a result, the requirement of additional benefits alleged by Denarii lacks merit.

### CONCLUSION

For the reasons stated above, Arab and Fuentes respectfully request that this Court deny Denarii's motions to strike and to dismiss.

Dated: August 5, 2013

*Denarii Systems, LLC v. Arab et al.*
*Case No.: 12-24239-CIV-O'SULLIVAN*

**Gomm & Smith, P.A.**
Rodney Quinn Smith, Fla. Bar No. 59523
e-mail: quinn.smith@gommsmith.com
Kristin Drecktrah, Fla. Bar No. 91026
e-mail: kristin.drecktrah@gommsmith.com
175 SW 7th Street, Suite 2110
Miami, Florida 33130
Telephone: (305) 856-7723
Fax: (786) 220-8265
*Attorneys for Defendants, Omar Arab and Greynier Fuentes*

By: */s Kristin Drecktrah*
    Kristin Drecktrah

*Denarii Systems, LLC v. Arab et al.*
Case No.: 12-24239-CIV-O'SULLIVAN

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: *s/ Kristin Drecktrah*
Kristin Drecktrah

## SERVICE LIST
*Denarii Systems, LLC v. Arab et al.*
Case No.: 1:12-cv-24239-O'SULLIVAN
United States District Court, Southern District of Florida

| | |
|---|---|
| **Adam S. Hall**<br>e-mail: adamhall@hlhlawfirm.com<br>Hall, Lamb and Hall, P.A.<br>2665 South Bayshore Drive, PH1<br>Miami, Florida 33133<br>Phone: (305) 374-5030<br>Fax: (305) 374-5033<br><br>*Attorney for Plaintiff, Denarii Systems, LLC*<br>Electronically served via CM/ECF | **Edward M. Mullins**<br>e-mail: emullins@astidavis.com<br>**Regan N. Kruse**<br>e-mail: rkruse@astidavis.com<br>Astigarraga Davis Mullins & Grossman, P.A.<br>701 Brickell Avenue, 16th Floor<br>Miami, Florida 33131<br>Phone: (305) 372-8282<br>Fax: (305) 372-8202<br><br>*Attorneys for Defendant, Blit Technologies Corp.*<br>Electronically served via CM/ECF |
| **Enrique Lazaro Yabor**<br>e-mail: rick.yabor@yaborlaw.com<br>Law Office of Rick Yabor, P.A.<br>9990 S.W. 77th Avenue, Penthouse 9<br>Miami, Florida 33156<br>Tel: (305) 779-5901<br>Fax:  (305) 779-5902<br><br>*Counsel for Defendant, Frank Alvarez*<br>Electronically served via CM/ECF | |