UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 12-24239-CIV-O'SULLIVAN

DENARII SYSTEMS, LLC,
a Florida Limited Liability Company,

      Plaintiff,

v.

OMAR ARAB,
GREYNIER FUENTES, and
FRANK ALVAREZ, individuals, and
BLIT TECHNOLOGIES CORP., a Florida corporation.

      Defendants.
_____/

## AFFIDAVIT OF MARITZA LYNGVED

1. I am over 18 years of age and make this affidavit based upon my personal knowledge.

2. I am an employee of Denarii Systems, LLC, where I serve as Director of Compliance and Administrator.

3. Denarii is a processor of prepaid financial products and services. Denarii's business is primarily focused on the processing of transactions associated with prepaid cards, which are accepted by vendors on the MasterCard network.

4. In order to develop and maintain its card-processing platform, Denarii employs a team of software engineers and developers responsible for writing Denarii's proprietary source code and ensuring that Denarii's platform is both functional and secure.

5. Denarii has invested several million dollars to develop, maintain, and upgrade its card processing platform through the development of proprietary source code.

{10341/00342272.1}                 1

6. Denarii has taken reasonable steps to protect the secrecy of its source code by ensuring that a limited number of trusted individuals had access to this information, including Defendants Omar Arab, Greynier Fuentes, and Frank Alvarez.

7. Pursuant to corporate policy, access to Denarii's proprietary source code is only available via password to authorized individuals associated with Denarii.

8. In October 2012, Franco Ceruti approached Linna Rivera, Denarii's Human Resources Director, with information that Arab was defrauding Denarii through the receipt of kickbacks from various third-party contractors, was approving fraudulent invoices from a company called Optimus Consulting Services, and had participated in the creation of a fraudulent company called Blit Technologies Corp. through which Arab and Greynier Fuentes were carrying out an additional fraudulent invoicing scheme to con Denarii out of roughly $100,000. This news was shared with the rest of Denarii management, including myself.

9. As a result of the information provided by Franco Ceruti, Denarii management immediately began investigating the accusations lodged by Ceruti, only to discovery that Ceruti's account was accurate.

10. Through its investigation Denarii learned that Alberto Padin (the principal of Optimus Consulting Services, and the individual who was supposedly rendering database administrator services to Denarii) had invoiced the company for $94,500 in services that were never rendered, despite Arab's approval of the invoices.

11. Similarly, Denarii discovered that Blit Technologies had been incorporated by the father of Greynier Fuentes' girlfriend, and had invoiced Denarii for over $60,000 in Microsoft licensing that Denarii had never received—in addition to $16,000 worth of server hardware and server configuration services that also never existed.

12. Furthermore, through Mr. Ceruti's presentation of checks and wire transfer documentation corroborating Mr. Ceruti's account of providing kickbacks to Arab in exchange for Denarii contracts, Denarii confirmed that Arab had been receiving significant funds from Denarii's third-party providers and independent contractors.

13. After learning of Denarii's investigation into potential misconduct, Greynier Fuentes resigned from his position at Denarii on October 19, 2012.

14. On October 22, 2012, following Fuentes' resignation, Denarii lost all access to its company-wide email system due to administrative changes that had been made to the account.

15. Greynier Fuentes was the only administrator authorized to make changes to the account during his employment with Denarii. Any changes made after his resignation, however, were not authorized by Denarii.

16. Denarii promptly began contacting Microsoft seeking to regain control of its email account and establish a new administrator for the account.

17. Microsoft refused to acknowledge ownership of the domain by Denarii despite Denarii's attempts at proving ownership through documentation requested by Microsoft, as Fuentes remained the only individual authorized to make any administrative changes to the account.

18. After numerous attempts to establish account ownership and take control of its own Microsoft Office 365 account, Denarii was forced to discontinue use of its "denariisystems.com" domain and create a new domain, "denariiglobal.com."

19. Denarii lost access to at least 23 active email accounts associated with the "denariisystems.com" domain, due to administrative changes made to Denarii's Microsoft Office 365 account after Fuentes' departure.

20. After the Defendants' departure, Denarii's investigation into the $93,963 worth of Blit invoices paid by Denarii revealed that the Microsoft licensing packages, servers, and server installation services billed by Blit were never provided to Denarii.

21. For example, Denarii paid Blit for licenses relating to Sharepoint, as well as a server and server configuration services allegedly provided to run Sharepoint. However, Denarii never received licenses for Sharepoint from Blit. Not did it receive a server to house Sharepoint or its data.

22. Despite the fact that Denarii did not receive these licenses, servers, and server configuration services, Omar Arab approved the payment of Blit invoices.

23. In addition to approving invoices from Blit Technologies, Omar Arab also approved invoices from Optimus Consulting Services, an entity that was supposedly providing project management and database administrator services to Denarii over a period of approximately nine months.

24. Despite receipt and payment of these invoices, there is no indication -- based on Denarii's investigation -- that Padin worked on a single Denarii project or ever once interacted professionally with Denarii software developers or Denarii's software architect.

25. Based on Defendants' misconduct, Denarii seeks $44,799.80 in damages based on professional fees associated with responding to the Defendants' hacking and data destruction; $30,000 in damages based on professional fees associated with forensic analysis of hardware and software following Defendants' hacking and data destruction; $7,437.50 in damages based on costs associated with securing premises and data centers following Defendants' misconduct; $25,000 in statutory damages based on violation of the SCA; $78,573 in damages based on

fraudulent Blit Technologies invoices; and $84,000 in damages based on fraudulent Optimus invoices, exclusive of attorney's fees, costs, and punitive damages.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Maritza Lyngved

SWORN TO AND SUBSCRIBED before me this 10th day of February, 2014, by Maritza Lyngved, who is personally known to me and did take an oath.

_____
NOTARY PUBLIC, State of Florida

Richard Raymond Barone Jr.
COMMISSION # EE 188083
EXPIRES: APR. 09, 2016
WWW.AARONNOTARY.com